United States District Court
Southern District of Texas
**ENTERED**
March 27, 2018
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ARMANDO VILLALOBOS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:17-90** |
| | § | **Criminal No. B:12-374-1** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On April 24, 2017, Petitioner Armando Villalobos filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 1. The Government has filed responses to his petition. Dkt. Nos. 15, 26. Villalobos has filed a reply brief. Dkt. No. 27.

Villalobos raises two issues in his petition: (1) his counsel was ineffective for failing to object to the loss calculation used in arriving at the Guideline sentencing range, and (2) the jury was not properly instructed on what constituted an "official act." Dkt. Nos. 1, 8. The Government argues that the first claim is untimely filed and the second claim is procedurally defaulted and that both claims are substantively meritless. Dkt. Nos. 15, 26.

After reviewing the record and the relevant case law, it is recommended that the petition be dismissed as untimely filed and procedurally defaulted, or alternatively, denied as meritless.

## I. Background

### A. Factual Background

Villalobos was the elected district attorney for Cameron County, Texas, between 2005 and 2013 and was charged with using his office for his own personal enrichment. CR Dkt. No. 238, pp. 15-17. His jury trial in this case lasted 11 days, with 22 witnesses testifying. The Court will focus its discussion of the facts upon those most relevant to the claims made in the instant § 2255 petition.

1

On May 7, 2012, Villalobos was indicted for one count of racketeering, in violation of 18 U.S.C. § 1962(c); one count of conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d); three counts of honest services fraud, in violation of 18 U.S.C. § 1341 & 1346; and seven counts of extortion under color of official right, in violation of 18 U.S.C. § 1951. U.S. v. Villalobos, Criminal Case No. 12-374-1 (S.D. Tex. 2012) (hereafter "CR").

On January 7, 2013, a superseding indictment was issued. CR Dkt. No. 84. In that superseding indictment, which was the operative indictment at trial, Villalobos was charged with nine total counts. Id. The counts numbered as follows: (1) racketeering, (2) conspiracy to commit racketeering, (3-9) extortion under color of official right. Counts three, and five through nine, all charged Villalobos with accepting money to take certain actions as the district attorney. Id. Count four charged Villalobos with aiding and abetting a state district judge who committed extortion under color official right. Id.

### 1. Forfeiture Cases

Oscar De La Fuente, a local attorney, testified at trial that, in 2008, he represented Ricardo Chavez in a civil forfeiture case (hereafter "truck case."). CR Dkt. No. 216-1, pp. 4-6. Chavez and Ricardo Sanchez were arrested in a truck containing approximately $900,000 in cash, which the government alleged were drug proceeds. Id., p. De La Fuente had once represented the owner of the truck, Julio Villarreal, in an unrelated criminal case, and Villarreal asked De La Fuente to represent him in recovering the truck from any possible government forfeiture. Id. Villarreal told De La Fuente that "[h]e didn't want the money. He wanted the truck." Id., p. 8.

De La Fuente went to Villalobos to talk about returning Villarreal's truck. CR Dkt. No. 216-1, pp. 8-9. According to De La Fuente, Villalobos told De La Fuente that he should represent Chavez, the passenger in the vehicle, and "there would be money to be had if I represented the passenger in that case." Id. Eddie Lucio, another local attorney, agreed to represent Sanchez. Id. De La Fuente testified that "Villalobos had the deal worked out already where if I represented the passenger, Mr. Chavez, that I would get $50,000, and Mr.

Lucio would get $50,000." Id.   Those amounts were later reduced to $42,000, each, to represent Chavez and Sanchez, plus the return of the truck to Villarreal. Id, pp. 10-11.

In other words, $42,000 would be putatively returned to Chavez and Sanchez, each, in the forfeiture case as their own personal property, despite the fact that both men had given sworn statements to the police that the money did not belong to them. CR Dkt. No. 216-1, pp. 9-10.  De La Fuente testified that because both men disclaimed ownership of the money, "[t]hat meant to me that the state had full claim to the money."  De La Fuente testified that he did not "do any real substantive work" on the truck case. Id, pp. 10-11.

De La Fuente testified that after the truck case was concluded, he took the $42,000 check, deposited it in his account and gave none of it to Chavez. CR Dkt. No. 216-1, pp. 13-14.  De La Fuente testified that "I kept the money, and I gave Mr. Villalobos a kickback on that money." Id.  De La Fuente withdrew $3,000 in cash and paid it to Villalobos in a private room at a local topless bar. Id, pp. 14-15.  When asked why he gave Villalobos the cash, De La Fuente responded, "[b]ecause it was understood that he was going to get some of the money back since I had gotten $42,000 for little or no work." CR Dkt. No. 216-1, pp. 15-16.

The Government introduced evidence that Lucio also withdrew $3,000 in cash, from his account, within a month of the checks being issued in the forfeiture case. CR Dkt. No. 216-1, p. 16.

De La Fuente also testified that, in May 2010, Villalobos informed De La Fuente that a forfeiture proceeding had been filed relating to $500,000 in drug money, that was found in a house that was owned by Villarreal or Villarreal's mother (hereafter "house case"). CR Dkt. No. 216-1, p. 17.  The State was seeking to forfeit the house and the money. Id.

Villalobos told De La Fuente that he "wanted to work out a settlement on this case," so that De La Fuente would "receive a portion of the proceeds, and the state would receive a portion of the proceeds." CR Dkt. No. 216-1, pp. 21-22.  Villalobos wanted De La Fuente "to get authority from [Villarreal] to settle this case. [Villalobos] was willing to pay me a substantial amount of money, much like in the other forfeiture case that we had had." Id.

3

When De La Fuente had difficulty scheduling a time to visit Villarreal at the federal prison in Beaumont, Texas, Villalobos personally arranged for the state to pay for De La Fuente's hotel and sent an assistant district attorney with De La Fuente, all under the guise that Villarreal was going to "debrief" for the state. CR Dkt. No. 216-1, pp. 23-34.  Villarreal gave De La Fuente the authority to settle the case, but wanted $15,000 in order to pay a fine from his federal criminal case. Id, pp. 34-37.

In the house case, $97,000 of the money and the house were returned to Villarreal; the remaining money was forfeited to the state. CR Dkt. No. 216-1, p. 36.  As to the $97,000, De La Fuente gave Villarreal the requested $15,000, and kept the rest for himself. Id.  De La Fuente paid Villalobos $2,000 in cash outside of a Brownsville restaurant as a kick back. Id, p. 35.  Approximately two weeks after De La Fuente received the check in this case, he spoke with Villalobos at a building dedication ceremony. CR Dkt. No. 216-2, p. 23.  Villalobos – who was running for an open congressional seat at that time – asked if De La Fuente had received the check and that Villalobos "was expecting a campaign contribution for his Congressional race out of that [settlement]." Id, p. 24.  The campaign contribution was expected to be additional money, beyond the $2,000 already given in cash to Villalobos personally. Id.

De La Fuente testified that "the campaign contributions were going to come from funds that I received from this check from the money house seizure case." CR Dkt. No. 216-2, p. 26.  He further explained that the money was putatively "a campaign contribution, but it was really a kickback for the money I was getting on the money house seizure case." Id.  De La Fuente spoke to Villalobos about how to structure the donation, so that De La Fuente and his wife each sent separate checks for $2,500 from their personal bank accounts to legitimize the contributions under federal election laws. Id.  Thus, as to the truck case and the house case, De La Fuente paid Villalobos $5,000 in cash and contributed $5,000 to his congressional campaign, all as kickbacks.

4

## 2. Livingston Case

In 2007, Amit Livingston was scheduled to go to trial in the 404th District Court in Cameron County for murdering his girlfriend on South Padre Island. CR Dkt. No. 227, pp. 13-20.  Pending trial, Livingston was free on a $500,000 cash bond, that had been paid by his father. Id, p. 12.  Around this same time, the family of the victim filed a wrongful death civil suit against Livingston. Id, p. 16.  Both the murder case and the wrongful death civil case were pending in the 404th District Court. Id.  Eddie Lucio represented the victim's family in the civil case. CR Dkt. No. 231, pp. 5-6.  Mario Hernandez, the victim's ex-husband, testified that Villalobos personally told him that he should consider filing a civil action against Livingston and recommended that the family hire Lucio. Id.

On February 13, 2007 – the day that the murder trial was scheduled to begin – Livingston reached a plea agreement with the state. CR Dkt. No. 227, pp. 17-19.  Livingston would plead guilty that morning and be sentenced that same day to 23 years of incarceration, but would not have to report to the prison for 60 days. Id, pp. 19-22.  Livingston did not report to the prison and, instead, absconded to his native India.[1]

Because Livingston was sentenced the same day that he pled guilty, his bond money was to be returned to him and the state would not forfeit the money if Livingston failed to report to the prison. CR Dkt. No. 227, pp. 17-19.  The plea agreement stipulated that the $500,000 bond money would be used to settle the civil case. Id., p. 20.  Lucio represented the victim's family in the civil case and received $200,000, as his contingency fee. Id, p. 23.

Abel Limas, the state court judge who oversaw both cases, was running for re-election in 2008. CR Dkt. No. 227, p. 6.  Limas testified that the Livingston sentence and his subsequent flight from justice was a "political hot potato," for Limas in his re-election bid. Id, p. 25.  Limas testified that he and Villalobos "had a very intense two or three weeks, me asking questions about what happened and who was monitoring [Livingston] and . . . what

---

[1] Livingston was arrested on May 6, 2014, in India, and was extradited to the United States. Emma Perez-Trevino, International fugitive, Amit Livingston, arrives in Harlingen, Valley Morning Star, July 14, 2015, at A1.

was the probation department's role." Id. Limas testified that he considered issuing an order to show cause, in the criminal case, to receive an explanation "as to what had really happened as far as his nonappearance, Mr. Livingston's nonappearance." Id, p. 26.

Limas, who considered himself a "mentor" to Villalobos, said that he chose not to issue the show cause order after Villalobos "smoothed things out" with him. CR Dkt. No. 227, pp. 9, 26-27. Villalobos achieved this by handing Limas a McDonald's bag with $5,000 in cash inside, which Limas used to travel to Las Vegas and watch a boxing match. Id, pp. 27-28. Villalobos followed up by giving Limas an additional $4,700 in cash. Id, pp. 28-29. Limas "knew . . . for a fact" that the money was a kickback from Lucio to Villalobos for arranging the bond to be used to satisfy the civil case. Id, pp. 28-29. Limas also "knew" that the money was being paid to him to keep his "mouth shut" and to consider the matter "settled." Id, pp. 28-29.

Limas testified that if the bond had been forfeited – instead of being used to settle the civil case – the bond would have been paid to the state. CR Dkt. No. 227-4, pp. 7-8.

### 3. Verdict

In the final jury instructions, the Court did not define what constituted an "official act" for any of the counts of conviction. CR Dkt. No. 207. As to the extortion counts, the jury instructions stated "[i]f a public official accepts or demands property in return for promised performance or nonperformance of an official act, the official is guilty of extortion." Id, p. 29. 12:46-9:09

On May 24, 2013, after deliberating for about eight hours, the jury convicted Villalobos on count one (racketeering), count two (conspiracy to commit racketeering), count three (extortion under color of official right, relating to the Livingston case),[2] count four (aiding and abetting extortion by paying Limas in the Livingston case), count five (extortion under color of official right, relating to the seizure of the money from the truck), count six

---

[2] The Court would later set aside the conviction as to Count 3, finding that the conviction could not stand as a matter of law. CR Dkt. No. 311.

6

(extortion under color of official right, relating to Villarreal house and money case) and count nine (extortion under color of official right, relating to money paid by a defense attorney for favorable action on cases). CR Dkt. No. 208.  The jury found Villalobos not guilty on count seven (extortion under color of official right, relating to purported payments made by De La Fuente for favorable action on cases) and count eight (extortion under color of official right, relating to purported payments made by Limas, as a private attorney, for favorable action on cases). Id.

### 4. Presentence Report

In the final presentence report, Villalobos was assessed a base offense level of 14 as to all of his convictions. CR Dkt. No. 299, p. 35.  He was given an additional two-level enhancement because the underlying conduct involved more than one bribe payment or extortion scheme. Id.   Under a relevant conduct finding for all counts of conviction, Villalobos was held responsible for a loss of $722,534.76; of that amount, $681,000, was considered a loss sustained by the government and $41,534,76 was considered the value of anything received by Villalobos and those acting in concert with him. Id, p. 36.  He was assessed a 14-level enhancement because the loss was more than $400,000, but less than one million dollars. Id.  Villalobos was given another four level enhancement because he was an elected official. Id.  He was also assessed a two-level enhancement for serving as a leader of the offense and a four-level enhancement for obstructing justice. Id.   Thus, he was assessed a total offense level of 40. Id.

Villalobos had no criminal history, was assessed no criminal history points, and was placed in criminal history category I. CR Dkt. No. 299, pp. 37-38.

With a total offense level of 40 and criminal history category I, Villalobos's guideline sentencing range was 292 to 365 months imprisonment. CR Dkt. No. 299, pp. 43-44.  Pursuant to U.S.S.G. § 5G1.1(c)(1), that guideline sentencing range was reduced to 240 months, which is the statutory maximum term of imprisonment for each count. Id.

As relevant here, Villalobos's counsel timely filed an objection to the loss calculation used to arrive at the 14-level enhancement; that objection was addressed at the sentencing hearing. CR Dkt. No. 272.  Villalobos also moved for an acquittal on all seven counts of conviction. CR Dkt. No. 19.

### 5. Sentencing

At sentencing, the Court began by addressing the motion for an acquittal. CR Dkt. No. 368.  The Court made clear at the outset that it was denying the motion as to counts one, two, four, six and nine, but heard argument as to counts three and five. Id, p. 2.

The Court granted the motion as to count three, finding that the conviction could not stand as a matter of law.  CR Dkt. No. 311, pp. 3-6.  On the other hand, the Court sustained the conviction on count five. In a written follow-up ruling, the Court stated:

> regardless of the correctness or incorrectness of either or both of its rulings with regard to Counts 3 and 5, [the Court's] sentence as to the Defendant would be exactly the same as that pronounced in open court and which is included in the Judgment.  This Court weighed with great care, and with great discernment, the facts of the case, the counts of conviction and the factors pr[e]scribed in 18 U.S.C. § 3553(a).  The affirmation of the guilty finding as to Count 3 or the setting aside of the jury's verdict in Count 5 (or any other count for that matter) would not affect the sentence imposed.  The Court would still have instituted a sentence of 156 months.

Id, pp. 13-14.

At sentencing, the Court also addressed Villalobos's objection to the loss calculation. CR Dkt. No. 368.  Villalobos's attorney argued that the total loss amount should have been $20,000 ($15,000 in payments from De La Fuente and $5,000 from attorney Joe Valle), which was the amount counsel argued that, based on the counts of which Villalobos was convicted, was the direct money received by Villalobos.[3] Id, p. 33.

---

[3] Thus, Villalobos's counsel objected to the loss calculation, just not on the grounds Villalobos argues that they should have.  It's this latter failure, that Villalobos argues amounts to ineffective assistance of counsel at sentencing. Because of the formulation of the alleged error, it is not precluded by the prohibition against review of a technical application of the Sentencing Guidelines in a §2255 petition. See U.S. v. Smith, 59 F.3d 1242, *2 (5th Cir. 1995) (defendant argued

The Court overruled the objection and held that the loss amount was $691,000, broken out as follows: the $500,000 bond from the Livingston case; the $84,000 that should have been forfeited to Cameron County in the truck case; the $97,000 which should have been forfeited to Cameron County in the Villarreal house case; $5,000 in payments by De La Fuente; and $5,000 in payments from Valle. CR Dkt. No. 368, p. 36. Given that this amount was between $400,000 and one million dollars, a 14-level enhancement was applied. Id.

The Court did sustain Villalobos's objection to the obstruction of justice enhancement. CR Dkt. No. 368, pp. 45-47. Villalobos's revised total offense was 36 and his revised guideline sentence was 188 to 235 months. Id.

Villalobos's counsel moved for a downward departure, which the Court granted in part, based upon Villalobos's history of community involvement and the low likelihood of recidivism. In arriving at the sentence in this case, the Court, also considered the authority of the office Villalobos held and the damage he caused. CR Dkt. No. 368, pp. 85-90.

On February 11, 2014, the Court sentenced Villalobos to 156 months of incarceration on each count, to be served concurrently. CR Dkt. No. 368, pp. 88-89. Villalobos was also sentenced to three years of supervised release on each count, to be served concurrently. Id. Judgment was entered on February 13, 2014. CR Dkt. No. 312.

### 6. Direct Appeal

Villalobos timely filed a notice of direct appeal. CR Dkt. No. 306. On appeal, Villalobos argued that one of the jurors lied during voir dire about whether he was impermissibly biased in favor of law enforcement. CR Dkt. No. 387. Villalobos argued he was entitled to a new trial based on this juror's bias, which was evidenced through his Facebook postings and his initial request to be excused from jury duty. Id. Villalobos also asserted that the judgment of conviction required him "to seek pre-approval" from the probation office "before incurring new credit charges or opening a new credit line," but that

---

that the Court miscalculated the appropriate drug quantity for guidelines purposes and counsel was ineffective for not objecting; court held that former claim was not cognizable in § 2255 petition, but the latter was cognizable).

those conditions were not part of the oral pronouncement of sentence. Id.

On February 11, 2015, the Fifth Circuit affirmed Villalobos's conviction, but remanded the case to the District Court to have the written judgment conform to the oral pronouncement at sentencing.[4] CR Dkt. No. 387.

Villalobos did not file a petition for writ of certiorari with the Supreme Court.

### B. Current Procedural Posture

On April 24, 2017, Villalobos filed the instant § 2255 petition. Dkt. No. 1. In his petition, Villalobos alleges that his counsel was ineffective for failing to properly object to the Court's loss calculations in arriving at his sentence. Dkt. No. 1. Villalobos also made an ambiguous claim regarding Michael Wynne – the former Assistant United States Attorney ("AUSA"), who is now in private practice – who prosecuted him. Id., p. 14. Villalobos asserted that Wynne stated that if Villalobos could give Wynne information about Joe Lopez – a state prisoner represented by Wynne, after leaving the US Attorney's office, and who Villalobos had once prosecuted – then "Wynne could assist [Villalobos] in getting some relief as well." Id.

On May 11, 2017, Villalobos filed an amended § 2255 petition, making an additional argument that the District Court's failure to define "official acts" in the jury instructions may have led the jury to convict him for conduct that was not considered an official act under the Supreme Court's decision in McDonnell v. U.S., – U.S. —, 136 S. Ct. 2355, 2375 (2016).

On August 22, 2017, the Government filed a response to Villalobos's initial petition. Dkt. No. 15. The Government argued that the claim of ineffective assistance of counsel was untimely filed and should be dismissed on that basis. Id. The Government did not address the substance of the ineffective assistance claim or the claim concerning the definition of "official acts." Id.

On that same day, the Court ordered the Government to file a supplemental brief,

---

[4] On March 6, 2015, the District Court entered the amended judgment. CR Dkt. No. 388. The issuance of the amended judgment did not reset the time period for determining when Villalobos's conviction became final. In re Parker, 575 F. App'x 415, 419 (5th Cir. 2014).

responding to the merits of all of Villalobos's claims. Dkt. No. 16.  The Government was also ordered to "specifically address Villalobos's claim regarding any offers or representations made by, or relating to, the former AUSA who prosecuted Villalobos." Id.

On October 16, 2017, the Government timely filed its supplemental brief. Dkt. No. 26.  As to the ineffective assistance of counsel claim, the Government maintained that it was untimely filed, but also that it was substantively meritless, because the Court correctly computed the total loss in this case. Id.  As to the claim regarding the definition of "official acts," the Government asserts that, while the claim is timely filed, it is procedurally defaulted because Villalobos did not challenge the jury instructions on direct appeal. Id.  The Government further argues that any error was harmless because all of the actions taken by Villalobos fit within the definition of "official acts" under McDonnell. Id.  The Government also noted that any contact between Wynne and Villalobos occurred after the conclusion of the direct appeal and had no bearing on any of the issues raised in the habeas proceeding. Id.

On October 30, 2017, Villalobos filed his response to the supplemental brief. Dkt. No. 27.

## II. Applicable Law

### A. Section 2255

Villalobos seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1. That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

After a petitioner's conviction becomes final, the Court is entitled to presume that he stands fairly convicted. U.S. v. Frady, 456 U.S. 152, 164 (1982); U.S. v. Willis, 273 F.3d

592, 595 (5th Cir. 2001).  A petitioner who seeks to challenge a final conviction by collateral attack, can do so on constitutional or jurisdictional grounds. 28 U.S.C. § 2255(a); U.S. v. Shaid, 937 F.2d 228, 233 (5th Cir. 1991) (en banc).

Claims of ineffective assistance of counsel generally cannot be resolved on direct appeal and are properly raised for the first time in a § 2255 petition. U.S. v. Merritt, 24 F.3d 240 (5th Cir. 1994) (citing U.S. v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992).

### B. Timeliness

As relevant here, a defendant must file a § 2255 motion within one year of either (1) his conviction becoming final, or, (2) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(1)-(3).  In determining if the latter provision applies, the Court must consider if the Supreme Court issued a new rule, i.e., one that "breaks new ground or imposes a new obligation on the States or the Federal Government." Teague v. Lane, 489 U.S. 288, 301 (1989).

However, the one-year period of limitations under 28 U.S.C. § 2255(f) is not jurisdictional and is subject to equitable tolling.  U.S. v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002).  Having said that, equitable tolling should be invoked only in "rare and exceptional" circumstances. Id.  "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996). On the other hand, a "garden variety claim of excusable neglect" does not support equitable tolling. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).

The Court should apply the statute of limitations to each claim individually. See In re Young, 789 F.3d 518, 528 (5th Cir. 2015) (While the Fifth Circuit has not expressly ruled on the issue, "it appears that applying the statute of limitations to each claim is consistent with AEDPA and the precedent of other circuits.").

**C. Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004).   To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id.  To prove that counsel's performance was deficient, a petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012).  Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "Failure to prove either prong will defeat an ineffective assistance claim." Leal v. Dretke, 428 F.3d 543, 548 (5th Cir. 2005).  If the Court can resolve the claim based solely on the prejudice prong, it should do so without reference to the deficient performance prong. U.S. v. Ridgeway, 321 F.3d 512, 514-15 (5th Cir. 2003), abrogated on other grounds in U.S. v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004); see also Strickland, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

A defendant is "entitled to effective assistance of counsel at all stages of his criminal trial, including the sentencing phase." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997). A defendant may show prejudice at sentencing if counsel's ineffective assistance resulted in any additional incarceration.  Glover v. U.S., 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance.").

**D. Procedural Default**

Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, "without showing both 'cause' for his procedural default, and 'actual

prejudice' resulting from the error." Shaid, 937 F.2d at 232. "A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error." Id. Failure to raise issues on direct appeal causes them to be procedurally defaulted for purposes of collateral attack. U.S. v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001).

Cause is established by showing that "some objective factor external to the defense" prevented him from raising the issue on direct appeal. U.S. v. Reedy, 393 F. App'x 246, 247 (5th Cir. 2010) (unpubl.) (citing U.S. v. Guerra, 94 F.3d 989, 993 (5th Cir.1996)). Furthermore, actual prejudice requires that the defendant "shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis original). The cause and prejudice standard "presents a significantly higher hurdle than the plain error standard of review that is applied on direct appeal." U.S. v. Young, 77 F. App'x 708, 709 (5th Cir. 2003).[5]

## III. Analysis

A court may entertain and decide a § 2255 motion without requiring the production of the petitioner at a hearing. 28 U.S.C. § 2255. Further, a district court may deny a § 2255 motion without an evidentiary hearing "only if the motion, files, and records of the case conclusively show the prisoner is entitled to no relief." U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

Villalobos claims that, because he is representing himself pro se in this proceeding, he is entitled to the deference normally afforded to pro se litigants. In pro se cases, the Court is required to construe allegations liberally, to ensure that a pro se's claims are given fair and

---

[5] The only exception to the cause and prejudice standard is when "a constitutional violation has probably resulted in the conviction of one who is actually innocent" of the crime. Murray v. Carrier, 477 U.S. 478, 496 (1986). This standard requires evidence that the defendant did not commit the crime for which he was convicted. Id. Villalobos has not asserted a claim of actual innocence – and no evidence supporting such a claim is presented – for which reason the exception does not apply.

meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). Villalobos is a law school graduate and was a licensed attorney for many years, until he relinquished his license because of his criminal conviction in this case.

The Fifth Circuit has held that a licensed attorney is not to be given the liberal construction of his complaint that is normally afforded to pro se litigants. Olivares v. Martin, 555 F.2d 1192, 1194 n. 1 (5th Cir. 1977); Barnes v. Madison, 79 F. App'x 691, 696 (5th Cir. 2003); U.S. v. Dolenz, 229 F.3d 1147 n. 2 (5th Cir. 2000). The revocation of Villalobos's license to practice law did not deprive him of the legal knowledge he acquired as a lawyer. See U.S. v. Pierce, 649 F. App'x 117, 118 n. 1 (2d Cir. 2016) (disbarred attorneys proceeding pro se are entitled to "no special solicitude"). For that reason, the Court will not afford Villalobos the leniency normally afforded to pro se litigants.

Furthermore, even if the Court were inclined to afford Villalobos the leniency due to a pro se, the result in this case is no different. "[P]ro se litigants must still comply with the law and procedural rules." Washington v. E. Baton Rouge Par. Sch. Sys., 471 F. App'x 306 (5th Cir. 2012). Even under a lenient standard of pleading, Villalobos's claims do not entitle him to relief.

Villalobos raises two overarching claims: (1) his attorneys were ineffective for failing to properly object to the loss calculation at sentencing; and, (2) his jury instructions were too broadly worded concerning what constituted an "official act," under the bribery statute. The Court will discuss each of these claims in turn.

**A. Ineffective Assistance**

Villalobos argues that his attorneys were ineffective for failing to object to the loss calculation in his presentence report. This claim is untimely filed and substantively meritless.

**1. Untimely Filed**

As previously noted, Villalobos had one year after his conviction became final to file his § 2255 petition. 28 U.S.C. § 2255(f)(1). A conviction is final when the time for filing a certiorari petition expires or when the Supreme Court, on direct appeal, affirms the

15

conviction on the merits or denies the petition for writ of certiorari. Clay v. U.S., 537 U.S. 522, 527 (2003).

On February 11, 2015, the Fifth Circuit affirmed Villalobos's conviction. CR Dkt. No. 387. Villalobos did not file a petition for a writ of certiorari with the Supreme Court.

Supreme Court Rule 13.1 provides that "a petition for a writ of certiorari . . . is timely when it is filed . . . within 90 days after entry of judgment." SUP. CT. R. 13.1. Thus, Villalobos had until May 12, 2015, to file his petition for certiorari; his conviction became final on that date. Clay, 537 U.S. at 527. Based upon that date, Villalobos had until May 12, 2016 to timely file his § 2255 petition; he did not file his petition until April 24, 2017. Dkt. No. 1. His petition, as to this issue, is untimely by almost a year.

Despite this time-line, Villalobos makes several arguments that his claim is timely. The claims are meritless, as addressed below.

### a. Retroactive Constitutional Right

Villalobos asserts that his claim is timely because it was made within one year of the Supreme Court's decision in Molina-Martinez v. U.S., — U.S. —, 136 S.Ct. 1338 (2016). In Molina-Martinez, the District Court used an incorrect guideline sentencing range, which the defendant did not object to, and sentenced the defendant to the lowest end of that incorrect guideline sentencing range. Molina-Martinez, 136 S. Ct. at 1343-44. On direct appeal, the defendant argued that the error in the guideline calculation meant he should be resentenced. Id. The Fifth Circuit held that while the sentencing range was incorrectly decided, the error was not objected to and the defendant was required to provide additional evidence that error affected his substantial rights. Id.

The Supreme Court disagreed and held that "a defendant can rely on the application of an incorrect Guidelines range to show an effect on his substantial rights," and was not required to produce additional evidence under those circumstances. Molina-Martinez, 136 S. Ct. at 1348. At the same time, the Supreme Court made it clear that not every miscalculation of a Guideline sentence would require reversal. Id. For example, if the

sentencing judge expressly states that he or she would have given the same sentence "irrespective of the Guidelines range," then any error would be considered harmless and not require reversal. Molina-Martinez, 136 S. Ct. at 1346.

Molina-Martinez did not create a new rule, retroactive on collateral attack, that would have reset the one-year statute of limitations for filing a § 2255 petition. As an initial matter, Molina-Martinez only applies to cases on direct review where the defendant failed to object to an error in the calculation of the proper Guideline sentencing range. This is not the situation that Villalobos finds himself in; instead, he is arguing that his counsel was ineffective for failing to properly object to the calculation. In short, Molina-Martinez only applies to direct appeals, rather than a collateral attack on the conviction or sentence, such as the instant petition. Accordingly, Molina-Martinez is inapplicable in this case.

Villalobos attempts to evade this result by arguing that Molina-Martinez stood for the broad proposition "that due to the guidelines central role in sentencing, an error related to the guidelines can be particularly serious and a district court that improperly calculates a defendant's guideline range has committed a significant procedural error." Dkt. No. 23, pp. 3-4. This argument is unavailing.

As an initial matter, Molina-Martinez's holding, even broadly stated, does not apply to habeas proceedings. The Fifth Circuit has repeatedly held that claims which involve a technical application of the guidelines are not cognizable in a § 2255 petition. U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Actions that amount to a technical application of the guidelines are defined by the case law. See, e.g., Vaughn, 955 F.2d at 368; U.S. v. Williamson, 183 F.3d 458, 461 (5th Cir. 1999) (issue of whether career offender sentencing enhancement properly applied was a technical application of the Guidelines); U.S. v. Smith, 170 F.3d 184 (5th Cir. 1999) (relevant conduct finding regarding drug weight was a technical application of the Guidelines); U.S. v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998) (error in calculating sentence was a technical application of the Guidelines); Hawkins v. U.S., 706 F.3d 820 (7th Cir.2013) (technical errors in calculating guideline sentencing range are not

cognizable on collateral attack after <u>U.S. v. Booker</u>, 542 U.S. 220 (2005) made the guidelines advisory). The calculation of the amount of loss attributable to the defendant fits well-within these categories. <u>Molina-Martinez</u> did not announce a rule which overturned this precedent.

Furthermore, while defendants are not able to directly attack an error in calculating the Guideline sentencing range on collateral attack, they have always been free to argue that counsel was ineffective for failing to object to those errors. <u>See</u> <u>U.S. v. Lovato</u>, 698 F. App'x 791, 792 (5th Cir. 2017) (noting that a claim that counsel was ineffective for failing to object to an error in the calculation of the guideline sentencing range should be raised on collateral attack); <u>U.S. v. Thomas</u>, 384 F. App'x 394, 397 (5th Cir. 2010) (same); <u>U.S. v. Young</u>, 533 F. App'x 472, 476 (5th Cir. 2013) (addressing defendant's claim in § 2255 petition that counsel was ineffective for failing to object to error in guideline sentencing range). Because such a claim has long been cognizable on collateral attack, <u>Molina-Martinez</u> did not effect a change that would extend the filing of such a claim.[6]

### b. Due Diligence

Villalobos claims that he filed his § 2255 petition within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). This argument is also unavailing.

Villalobos asserts that he relied on the skill of his trial and appellate counsel, and let them determine the best legal arguments in his case. <u>See</u> Dkt. No. 23, p. 6 (Villalobos states that he "obtain[ed] attorneys who knew the subject matter and relied on their representations on how to proceed.").[7] Villalobos claims that he had no need to review his sentencing

---

[6] The substance of Villalobos's ineffective assistance claim is addressed below in the discussion regarding "Loss Calculation."

[7] In arguing that he rightfully relied on the representations of his trial and appellate counsel, Villalobos discussed post-convictions interactions with Wynne. Dkt. No. 1, pp. 14-16. The Court ordered further briefing on this aspect, to sort out any question of possible improper conduct. Having reviewed the briefing and Wynne's affidavit, the Court is satisfied that there is no possibility of misconduct in this case. Wynne's contact with Villalobos occurred only after the direct appeal had been decided and the conviction had been affirmed. Indeed, Wynne's actions, subsequent to the

transcript until he was preparing a pardon application after then-President Obama announced that he would be using the pardon and commutation powers more freely than his predecessors had. Id.

The Supreme Court has stated that "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that he should act. Johnson v. U.S., 544 U.S. 295, 308 (2005). "The important thing is to identify a particular time when [ . . .] diligence is in order." Id.

The facts underlying Villalobos's claim – that his attorneys failed to make certain arguments at sentencing – were known to him at sentencing, even if he did not fully understand the import of those facts. The relevant statute couches the deadline as being from the date that "the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," not the date that the defendant realized that he may have a valid claim. § 2255(f)(4) (emphasis added); see also U.S. v. Scruggs, 691 F.3d 660, 670 (5th Cir. 2012) (defendant did not show due diligence for § 2255(f)(4) purposes when underlying facts of the claim were on the record at trial). Furthermore, after his direct appeal was resolved, Villalobos had one year to review his sentencing transcript to search for discrepancies and errors. Villalobos has not alleged any reasons that he would have been unable to acquire the sentencing transcript within that time frame.

Accordingly, Villalobos's claims cannot be saved under the "due diligence" provision of § 2255(f)(4).

### c. Equitable Tolling

Furthermore, Villalobos's claim cannot be rescued by equitable tolling. Equitable tolling principally applies "where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Rashidi, 96 F.3d at 128. Villalobos claims that he relied on representations from his attorneys and did not review his sentencing transcript until he filed a pardon application. Dkt. No. 23. This

---

conviction and sentence, have no bearing on Villalobos's § 2255.

claim amounts to a "garden variety claim of excusable neglect," which militates against a finding of equitable tolling. Irwin, 489 U.S. at 96. Thus, equitable tolling should not apply in the present circumstances and Villalobos's claim should be denied as untimely filed.

### 2. Loss Calculation

Villalobos raises several objections to the loss calculation by the Court, arguing that counsel was ineffective for failing to raise those objections. Villalobos also asserts that his counsel should have argued that Villalobos was subjected to an unwarranted sentencing disparity based on "readily available statistics from the United States Sentencing Commission on similarly situated offenders." Dkt. No. 8, pp. 13-14. Even if these claim were timely, they should be denied.

As previously noted, if the Court can resolve any ineffective assistance claims solely on the prejudice prong, it should do so. Ridgeway, 321 F.3d at 514-15. It is prudent to do so in this case because any error did not impact Villalobos's sentence and was harmless.

The District Judge explicitly stated he "weighed with great care, and with great discernment, the facts of the case, the counts of conviction and the factors pr[e]scribed in 18 U.S.C. § 3553(a)." CR Dkt. No. 311, pp. 13-14. He went on to add that no matter the correctness of his decisions to any of the counts of conviction, he "would still have instituted a sentence of 156 months." Id.

In instances where the sentencing judge explicitly states that "the imposed sentence is the correct sentence" regardless of any errors, then there is no reasonable probability that a different sentence would have been given if counsel had made the objections urged by Villalobos. U.S. v. Bonilla, 524 F.3d 647, 656 (5th Cir. 2008); U.S. v. Lemus-Gonzalez, 563 F.3d 88, 94 (5th Cir. 2009). As in Bonilla and Lemus-Gonzalez, the District Judge in this case made it quite clear that he believed a sentence of 156 months was appropriate and correct, given "the facts of the case, the counts of conviction and the factors pr[e]scribed in

18 U.S.C. § 3553(a)." CR Dkt. No. 311, pp. 13-14.[8]  Given this explicit finding, the record demonstrates that any successful objections by counsel would not have changed Villalobos's sentence.  Accordingly, Villalobos was not prejudiced by counsel's performance and this claim should be denied.

### B. Jury Instructions

Villalobos's second claim is that, because the Court did not define "official acts" in the jury instructions, the jury may have convicted him based upon actions that do not fall within the statutory purview of "official acts."

The Government concedes that Villalobos's claim is timely filed, because it was filed within one year of the Supreme Court's decision in McDonnell. Dkt. No. 26, pp. 6-7 ("the defendant's McDonnell claim is timely . . ").  However, the Government asserts that Villalobos's claim is procedurally defaulted and substantively meritless.  The Court will address each of these arguments in turn.

### 1. Procedural Default

The Government asserts that because Villalobos raised no challenge to the jury instructions on direct appeal, he has procedurally defaulted the claim and it cannot be raised in his § 2255 petition.  The Court agrees.

Villalobos's direct appeal was decided by the Fifth Circuit on February 11, 2015. CR Dkt. No. 387.  The Supreme Court decided McDonnell on June 27, 2016. McDonnell, 136 S. Ct. 2355.  However, while the specific reasoning of McDonnell may not have been available to Villalobos, the general arguments made by McDonnell and other similar defendants (i.e. elected officials convicted of bribery and extortion related to actions taken in office) were available to him. See, e.g., U.S. v. Jefferson, 674 F.3d 332, 351 (4th Cir.

---

[8] The Court notes that even if Villalobos's claim is timely because of Molina-Martinez, he still is not entitled to relief.  A key point in Molina-Martinez was that the district judge was silent about whether the sentence would have been identical even under a correctly calculated Guideline sentencing range. Molina-Martinez, 136 S. Ct. at 1346-47.  That clearly is not the case here.  CR Dkt. No. 311.

2012), as amended (Mar. 29, 2012) (former congressman challenging jury instructions on "official acts" on direct appeal prior to McDonnell decision).

The Supreme Court has held that a habeas petitioner does not have good cause for failing to raise an issue on direct appeal – even if the key Supreme Court precedent does not arise until after the appeal is decided – unless the underlying claim "is so novel that its legal basis is not reasonably available to counsel." Bousley v. U.S., 523 U.S. 614, 622 (1998); Reed v. Ross, 468 U.S. 1, 16 (1984). Typically, a defendant can meet this standard by demonstrating that the Supreme Court explicitly overruled a prior precedent. Reed, 468 U.S. at 17.

In this case, the argument presented does not meet that standard. The McDonnell decision was explicitly premised upon the Supreme Court's decision in U.S. v. Sun-Diamond Growers of Cal., 526 U.S. 398 (1999) and was an extension of that decision. McDonnell, 136 S.Ct. at 2370. In Sun-Diamond Growers, the Supreme Court held that any violation of the bribery and extortion statutes must be "linked to a particular official act," and cannot be based on "the giving of gifts by reason of the recipient's mere tenure in office." Sun-Diamond Growers, 526 U.S. at 408 (emphasis added). The Supreme Court reasoned that to hold otherwise, would potentially criminalize petty acts, such as a championship professional sports team giving the President a replica jersey when visiting the White House or a high school principal giving the Secretary of Education a "school baseball cap" from that high school. Id., at 405-407. McDonnell was an extension of the holding in Sun-Diamond Growers, with the Supreme Court concluding in McDonnell that certain actions by public and elected officials – such as "[s]etting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information" – do not constitute official acts under the relevant statutes. McDonnell, 136 S. Ct. at 2371.

Even without the benefit of McDonnell, Villalobos could still have argued that his jury instructions were fatally flawed under the holding of Sun-Diamond Growers. To the extent that he claims he was convicted for accepting gifts that were given to him "by reason

of the recipient's mere tenure in office," those arguments were available under the still-valid precedent of Sun-Diamond Growers.  There is no reason that Villalobos could not have raised these arguments on direct appeal.

Additionally, Villalobos cannot show cause by arguing that he relied on appellate counsel to raise any meritorious issues. See Dkt. No. 23, p. 6 (Villalobos stating that he relied on representations of appellate counsel that there were no other valid issues for appeal). Villalobos has not raised any claims of ineffective assistance of appellate counsel.  Absent a valid claim of ineffective assistance of counsel, any errors or tactical decisions by counsel cannot establish cause to overcome procedural default. Murray v. Carrier, 477 U.S. 478, 488, (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective [ . . .] we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

Furthermore, Villalobos cannot argue that cause exists on the ground that it would have been futile to raise the claim on direct appeal prior to McDonnell.  The Supreme Court has explicitly held that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623 (quoting Engle v. Isaac, 456 U.S. 107, 130, n. 35 (1982)).  In other words, "the fact that the law was unsettled, or settled incorrectly in petitioner's circuit," does not excuse the procedural default. U.S. v. Thompson, 158 F.3d 223, 225 (5th Cir. 1998).

Given that Villalobos cannot show cause for failing to raise these arguments on direct appeal, the claim is procedurally defaulted and should be denied.  However, even if cause could be shown, Villalobos cannot establish prejudice, as his claims are substantively meritless.

### 2. Official Acts

As Villalobos correctly stated, the jury was not instructed on the precise definition of what constituted an official act, in order to convict him of racketeering or extortion. See CR Dkt. No. 207 (final jury instructions).  Villalobos argues that because the jury was not given

23

a precise instruction on what constitutes an "official act," the jury may have convicted him based on actions that did not meet the statutory definition of official acts. This argument is unsupported by the facts and merits no relief.

The Court first notes that the failure to instruct the jury on an element of the offense is subject to harmless error analysis. U.S. v. Stanford, 823 F.3d 814, 830 (5th Cir. 2016). In order to find a jury instruction error to be harmless, the Court – after a thorough examination of the record – must be "able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." U.S. v. Grant, 850 F.3d 209, 217 (5th Cir. 2017).

The Court will begin by examining the definition of an official act and then compare Villalobos's actions to that definition.

In discussing what constitutes an official act, the Supreme Court held:

> In sum, an 'official act' is a decision or action on a 'question, matter, cause, suit, proceeding or controversy.' The 'question, matter, cause, suit, proceeding or controversy' must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official. To qualify as an 'official act,' the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official.

McDonnell, 136 S. Ct. at 2371-72.

Under this definition, all of the underlying actions taken by Villalobos were official acts. Indeed, McDonnell had no affect on the law as it applied in Villalobos's case; Villalobos's acts were official acts before McDonnell was decided, just as they were after that decision. Even a brief examination of the acts reveals this fact.

Villalobos was ultimately convicted on count one (racketeering), count two

(conspiracy to commit racketeering), count four (aiding and abetting extortion by paying Limas in the Livingston case), count five (extortion under color of official right, relating to the seizure of the money from the truck), count six (extortion under color of official right, relating to Villarreal house and money case) and count nine (extortion under color of official right, relating to money paid by a defense attorney for favorable action on cases). CR Dkt. No. 208.   The actions taken in counts four, five, six, and nine were used to establish the predicate acts for counts one and two, for that reason, the Court will address counts four, five, six, and nine, first.

On count four, Villalobos was convicted for aiding and abetting Limas in extortion by paying him "in exchange for the performance and nonperformance of official acts of judicial discretion." CR Dkt. No. 84, p. 19.  Limas testified that he was paid to ensure that he would not issue an order to show cause to have the prosecutor's office explain how Livingston was able to abscond. CR Dkt. No. 227, pp. 26-27.  The official action – or rather, non-performance of an official act – was directly related to a specific criminal case that was in Limas's court.  The issuance of an order by a state judge surely falls within the definition of an official act in the <u>McDonnell</u> case.

On counts five and six, Villalobos was indicted for extortion for accepting payments "in exchange for the performance and nonperformance of official acts of discretion" in the truck and house forfeiture cases. CR Dkt. No. 84, pp. 20-22.  De La Fuente testified that Villalobos recruited him to represent the putative owners of property in ongoing forfeiture cases so that a settlement could be reached and money would be paid to Villalobos as a kickback. CR Dkt. No. 216-1, pp. 4-37.  In those instances, Villalobos agreed to take specific action – enter into a settlement agreement – related to a pending civil forfeiture lawsuit.  This clearly falls within the definition of "a formal exercise of governmental power that is similar in nature to a lawsuit before a court." <u>McDonnell</u>, 136 S. Ct. at 2371.  Thus, these convictions were based upon official acts under the definition given in <u>McDonnell</u>.

As to count nine, Villalobos was indicted for extortion for accepting payments "in

25

exchange for the performance and nonperformance of official acts of discretion" in exchange for favorable prosecution decisions. CR Dkt. No. 84, p. 24.  Joe Valle, a former criminal defense attorney, testified that Villalobos arranged for favorable plea bargains for his clients in exchange for campaign contributions from Valle. CR Dkt. No. 245, pp. 14-24.  In each of those instances, Villalobos agreed to take specific actions – enter into a plea bargaining agreement – related to a specific case pending at that time.  These acts clearly fall within the definition of "official acts" in McDonnell.

The convictions on counts four, five, six and nine all formed the predicate acts for the racketeering-related convictions on counts one and two. CR Dkt. No. 84.  Thus, because the jury convictions on those four counts were within the proper bounds of "official acts," then the convictions on counts one and two are proper as to "official acts."  See 18 U.S.C. § 1961(5) (only two predicate acts are required to convict a defendant of racketeering); U.S. v. Cauble, 706 F.2d 1322, 1344 (5th Cir. 1983).

McDonnell had no impact on the legality of Villalobos's actions and the record shows that the verdict would not have been different if the jury had been instructed as to what constituted official acts, at the time of the trial.  Therefore, as with Villalobos's other claims, this one is procedurally barred and/or substantively meritless and should be denied.

## IV. Recommendation

It is recommended that Petitioner Armando Villalobos's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be **DISMISSED** as untimely filed and procedurally defaulted, or alternatively, **DENIED** as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1).  A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To satisfy this standard, a petitioner must demonstrate that jurists of reason could

disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Villalobos's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Villalobos's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

## B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on March 27, 2018.

Ronald G. Morgan
United States Magistrate Judge